MS JEWELERS, INC., t/a
Manhattan Jewelers

v.

REDEVELOPMENT AUTHORITY OF
the CITY OF PHILADELPHIA,
Appellant.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 8, 1998.

Decided Feb. 2, 1999.

Reargument Denied March 30, 1999.

Peter A. Galante, Philadelphia, for appellant.

Stewart M. Weintraub, Philadelphia, for appellee.

Before COLINS, President Judge, FRIEDMAN, Judge (P.), and McCLOSKEY, Senior Judge.

---

FRIEDMAN [1], Judge.

The Redevelopment Authority of the City of Philadelphia (Authority) appeals from an order of the Court of Common Pleas of Philadelphia County (trial court) remanding the instant eminent domain proceeding to the Board of Viewers of Philadelphia County (Board) for further proceedings consistent with the trial court's opinion.[2] We affirm the remand as modified.

On May 11, 1988, the Authority condemned the premises in which MS Jewelers, Inc., t/a Manhattan Jewelers (Manhattan) conducted a retail jewelry business. At all pertinent times, Manhattan had been a lawful occupant of the premises and had maintained an inventory of jewelry (inventory) for sale.

Following condemnation of the premises, by stipulation dated April 28, 1989, Manhattan and the Authority agreed that Manhattan would have the right to continue lawful occupancy of the premises until January 31, 1990, and thereafter so long as Boyd's of Philadelphia (Boyd's) continued to occupy its store also located on the premises. Additionally, the stipulation resolved all elements of general and special damages *except* for any claims Manhattan might have under Sections 601–A(b)(1) and 601–A(b)(2) of the Eminent Domain Code (Code).[3] Furthermore, the stipulation provided for Manhattan's rent obligation to the Authority to be reduced to $1,000.00 per month, retroactive to May 11, 1988, the date of condemnation.

On March 30, 1990, while Boyd's remained on the premises, Manhattan vacated the premises and deposited with the Authority a quantity of inventory that Manhattan claimed to be worth in excess of $250,000.00. To support this claim, Manhattan submitted approximately twenty-five invoices detailing inventory deliveries. Of these twenty-five in-voices, only three were marked "paid" and only four were dated prior to the date of condemnation. The four invoices dated prior to the date of condemnation alone totaled only $13,315.50.

On February 27, 1995, Manhattan presented its claim to the Board for determination of damages owed to Manhattan for personal property taken pursuant to the condemnation. Following a hearing on the matter, the Board awarded Manhattan the sum of $13,315.50, finding that Manhattan was not entitled to payment for inventory delivered to it subsequent to May 11, 1988, the date of condemnation. Manhattan appealed the Board's decision to the trial court. Thereafter, the Authority filed a motion for determination of Manhattan's objections and confirmation of the Board's award, to which Manhattan filed a response.

On September 25, 1997, the trial court remanded the matter to the Board for further proceedings. The trial court instructed the Board to use the date of displacement, March 31, 1990, rather than the date of condemnation, May 11, 1988, as the operative date for determining the "value in place" of Manhattan's inventory. The instant appeal followed.

■ On appeal to this Court,[4] the Authority first asserts that the trial court erred when it determined that the Board should have valued Manhattan's inventory as of the date of displacement. Rather, the Authority contends that the date of condemnation, rather than the date of displacement, was indeed the correct date to use to determine the value of the inventory. We do not agree.

Under section 601–A(b)(1) of the Code, 26 P.S. § 1–601A(b)(1), "displaced persons" are entitled to damages incurred as a result of their displacement from their place of busi-

---

1. This case was reassigned to the authoring judge on December 22, 1998.

2. We note that this court, by order dated April 27, 1998, determined that the trial court's order was a final order from which an appeal could be taken.

3. Act of June 22, 1964, Special Sess., P.L. 84, *added by* Act of December 29, 1971, P.L. 640, *as amended*, 26 P.S. §§ 1–601A(b)(1), 1–601A(b)(2).

4. This court's scope of review in an eminent domain case is limited to determining whether the lower court committed an abuse of discretion or error of law. *Becker v. Redevelopment Authority of Luzerne County*, 66 Pa.Cmwlth. 295, 444 A.2d 800 (1982).

ness. The definition of "displaced persons" under the Code is broader than the definition of "condemnee." Section 201(8)(i)(A)(I) of the Code provides that "displaced person":

(i) [m]eans:

(A) [a]ny condemnee or other person who moves from real property or moves his personal property from real property:

(I) as a direct result of a written notice of intent to acquire or the acquisition of such real property, in whole or in part, for a program or project undertaken by an acquiring agency.[5]

. . .

26 P.S. § 1–201(8)(i)(A)(I). The fact that those entitled to recover damages as "displaced persons" under Section 601–A of the Code includes entities other than condemnees suggests that the date of displacement, rather than the date of condemnation, may be the relevant date for valuation of a displaced person's inventory.

■ Additionally, we note that, in the case at bar, Manhattan was given permission to retain occupancy of the condemned property after the date of condemnation and paid rent to the Authority in order to secure such occupancy. It would be patently unreasonable to provide for continued occupancy of an indefinite duration and then penalize the business occupant for purchasing inventory

needed to conduct business.[6] This is what would result were the date of valuation of inventory to be the date of condemnation rather than the date of displacement. Accordingly, under the circumstances here, the trial court correctly concluded that the date of displacement, rather than the date of condemnation, was the correct date of valuation of Manhattan's inventory under Section 601–A (b)(1) of the Code.[7]

Next, the Authority contends that the trial court erred in concluding that Manhattan's inventory has "value-in-place."[8] This contention appears to be based upon the Authority's premise that only machinery, equipment and fixtures can have "value in place." The Authority asserts that because Manhattan's inventory was not "installed," it cannot be considered to have "value in place." Although we cannot accept the basis for the Authority's argument, we agree that the trial court erred when it determined that Manhattan's inventory had "value in place."[9]

We note that, as one displaced from its place of business, Manhattan's entitlement to damages is governed by section 601–A(b)(1) of the Code, which provides:

(b) Any displaced person who is displaced from his place of business ... shall be entitled, in addition to any payment received under subsection (a) of this section, to damages for dislocation of such business ... as follows:

---

5. Section 201(5) of the Code, 26 P.S. § 1–201(5), defines "acquiring agency" as any entity vested with the power of eminent domain.

6. We note that whether the amount of inventory acquired during the period of time between the date of condemnation and the date of displacement was reasonable is a question not before this court.

7. The Authority also argues that the trial court erred in not affirming the Board's award where Manhattan failed to object to the Board's finding that Manhattan had no title and/or compensable property interest in inventory delivered after the date of condemnation. We do not agree. A thorough review of the record shows that the Board made no specific finding regarding title or property interest in the inventory after the date of condemnation. Thus, Manhattan had no obligation to raise an objection thereto in order to preserve its right to appeal the Board's finding of fact that the date of condemnation was the date of valuation of the inventory.

8. 37 Pa.Code § 151.1 defines "value in place" as:

The value the personal property would have, installed in real property housing a going business, considering such factors as original cost, delivery and installation costs, physical and economic depreciation and functional obsolescence.

9. Unlike the Authority, we do not base this belief on the fact that "value in place" is necessarily limited to "installed" machinery, equipment or fixtures. Indeed, we conclude that an item need *not* be installed to possess "value in place" because we can envision situations in which uninstalled property might well have "value in place." *See e.g., Pikur Enterprises v. Pennsylvania Department of Transportation,* 163 Pa. Cmwlth. 251, 641 A.2d 11, *appeal denied,* 539 Pa. 657, 651 A.2d 543 (1994). However, the inventory here, i.e., jewelry for retail sale, is not among these situations.

(1) Actual direct losses with reference to personal property, but not to exceed the greater of (i) the reasonable expenses which would have been required to relocate such personal property, *or* (ii) the value in place of such personal property *as cannot be moved without substantially destroying or diminishing its value,* whether because of the unavailability of a comparable site for relocation or otherwise, or without substantially destroying or diminishing its utility in the relocated business . . . .

26 P.S. § 1–601A(b)(1) (emphasis added).

 Simply put, the inventory here, i.e., jewelry for retail sale, has no "value in place" because it can easily be moved without substantially destroying or diminishing its value.[10] Accordingly, we conclude that, under section 601–A(b)(1) of the Code, Manhattan is entitled only to the reasonable expenses which would have been required to relocate its inventory. Thus, we affirm the trial court's remand of the eminent domain proceedings; however, we instruct that valuation of damages be limited to the reasonable expense required to move Manhattan's inventory rather than to the inventory's "value in place."[11]

### *O R D E R*

AND NOW, this 2nd day of February, 1999, the order of the Court of Common Pleas of Philadelphia County, dated September 25, 1997, is hereby affirmed as modified consistent with this opinion.

Dissenting Opinion by Senior Judge McCLOSKEY.

McCLOSKEY, Senior Judge, Dissenting.

I respectfully dissent. Although I agree with the holding of the majority that the date of displacement is the proper date for the valuation of Manhattan's inventory, I cannot

agree with the majority's general holding that jewelry can *never* have "value in place." Such a sweeping declaration sets a dangerous precedent and is in contravention of existing case law that holds that inventory *can* have "value in place." *Pikur v. Pennsylvania Department of Transportation,* 163 Pa. Cmwlth. 251, 641 A.2d 11 (1994), *petition for allowance of appeal denied,* 539 Pa. 657, 651 A.2d 543 (1994). In the instance, such as here, where a business' inventory consists of jewelry, a court should *not* be precluded from holding that such has "value in place."

Accordingly, I would have affirmed the order of the Court of Common Pleas of Philadelphia County (trial court) as to the date of valuation, but I also would have remanded the matter to the trial court to develop a record regarding Manhattan Jewelers' inventory and determine whether such inventory, i.e., jewelry, has "value in place." Only after such a determination could this Court conduct a meaningful review.

---

**10.** We note that inventory of such a nature (jewelry) does not qualify for replacement value, as jewelry is not specially created for the location and is easily movable unlike, for example, a custom-crafted display case.

**11.** Because we conclude that this particular inventory has no "value in place," damages are

limited to reasonable moving costs. However, we note further that counsel for Manhattan conceded at oral argument that Manhattan's entire existing inventory can fit into a single briefcase. Thus, whether Manhattan is moving $13,000 worth of jewelry or $250,000 worth of jewelry, the moving costs are unaffected.